1  Rosemary Amezcua-Moll SBN 223875
          Rose@amalaw.net
2  Sarah J. Nowels, SBN 273471
          Sarah@amalaw.net
3  AMEZCUA-MOLL & ASSOCIATES, P.C.
   1122 East Lincoln Avenue, Suite 203
4  Orange, CA 92865
   Telephone: 714-288-2826
5  Facsimile: 714-464-4536
6  Attorneys for Plaintiff, PAUL REIF

7

8              **UNITED STATE DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  PAUL REIF,                        Case No.: 15-CV-00636-VAP-SP
                                      Assigned to: The Honorable Virginia Phillips
12            Plaintiff,
                                      PLAINTIFF PAUL REIF'S OPPOSITION
13        vs.                         TO DEFENDANT'S MOTION FOR
                                      SUMMARY JUDGMENT OR
14  SHAMROCK FOODS COMPANY, INC., an  ALTERNATIVELY, SUMMARY
    Arizona Corporation; and DOES 1 to 50,   ADJUDICATION
15  inclusive
                                      *Documents submitted herewith:*
16            Defendants.             *(1) Rosemary Amezcua-Moll's Declaration*
                                      *    with exhibits;*
17                                    *(2) Paul Reif's Declaration;*
                                      *(3) Separate Statement of Disputed and*
18                                    *    Undisputed Facts;*
                                      *(4) Objections to Evidence; and*
19                                    *(5) [Proposed] Order*
20
                                      **Hearing Date:  February 29, 2016**
21                                    **Hearing Time:  2:00 p.m.**
                                      **Courtroom:      2**
22                                    **Judge:          Hon. Virginia Phillips**
23
                                      Removal Date  : April 7, 2015
24                                    Trial Date:      May 17, 2016
25

26        Plaintiff PAUL REIF submits his opposition to the motion for summary

27  judgment, or alternatively, summary adjudication, submitted by Defendant

28  SHAMROCK FOODS COMPANY, INC. This opposition is based on the

                                      1

following memorandum of points and authorities, the concurrently filed separate statement of disputed and undisputed facts, declarations and objections to evidence, the Court's record in this matter and upon such other evidence, both oral and documentary as the Court may receive at the hearing on this Motion.

Dated: February 8, 2016          AMEZCUA-MOLL & ASSOCIATES, P.C.

BY     /S/ Sarah Nowels
          Rosemary Amezcua-Moll, Esq.
          Sarah J. Nowels, Esq.
          Attorney for Plaintiff, Paul Reif

PLAINTIFF PAUL REIF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUCIATION
Case No.:  15-CV-00636-VAP-SP          The Honorable Virginia Phillips, Courtroom 2

**Table of Contents**

I. INTRODUCTION ..................................................................................6

I. FACTUAL BACKGROUND.............................................................6

II.   LEGAL ARGUMENT ....................................................................12

   A.   Material Facts are in Dispute as to Plaintiff's Second and Third Causes of Action Under FMLA/CFRA.............................................................12

   1.   Material Facts are in Dispute as to whether Plaintiff Provided the Necessary Notice of His Intent to Invoke FMLA Prior to His Termination......12

   2.   Material Facts are in Dispute as to whether there is a Causal Link Between Plaintiff's Request for CFRA Leave and His Termination and whether Plaintiff's Request for FMLA Leave was a Negative Factor in His Termination. 14

   B.   Material Facts are in Dispute as to Plaintiff's Fourth Claim for Violation of Labor Code 1102.5. ..........................................................................16

   1.   Material Facts are in Dispute as to whether Plaintiff's Email Regarding Trans Fat Margarine was a Protected Activity and Related to His Termination. 16

   2.   Material Facts are in Dispute as to whether Plaintiff's Manager Requesting He Deliver Chemical Products Resulted in Violation of Law. .........................17

   3.   Material Facts are in Dispute as to whether Plaintiff Requesting that He Not Be Charged For a Floating Holiday on a Day He Was Working was a Protected Activity. .............................................................................17

   C.   Material Facts are in Dispute as to Plaintiff's First Claim for Wrongful Termination in Violation of Public Policy. ......................................................18

   D.   Material Facts are in Dispute as to Plaintiff's Fifth Cause of Action for Intentional Infliction of Emotional Distress .....................................................19

   1.   Material Facts are in Dispute as to whether Plaintiff's IIED Claim is Preempted by the Workers Compensation Act...............................................19

   2.   Material Facts are in Dispute as to whether Defendant's Conduct Rose to The Level of "Extreme and Outrageous Conduct."...........................................20

E.   Material Facts are in Dispute as to Plaintiff's Sixth Claim for Failure to Indemnify. ..................................................................................................21

F.   Material Facts are in Dispute as to Plaintiff's Seventh, Eighth and Ninth Claims for Labor Code Violations Based on Deducting a Floating Holiday. .....22

G.   Additional Discovery is Necessary and Therefore Plaintiff Respectfully Requests Defendant's Motion be Denied. .........................................................22

III.   CONCLUSION ..............................................................................................23

PLAINTIFF PAUL REIF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
Case No.:  15-CV-00636-VAP-SP                    The Honorable Virginia Phillips, Courtroom 2

**Cases**

Hentzel v Singer Company (1982) 138 Cal.App.3d 290, 305..................................19

Huffman v. Interstate Brands Cos. (2004) 121 CA4th 679, 695 ............................20

*Maurey v. Univ. of S. Cal.*, 87 F.Supp. 2d 1021, 1033(C.D. Cal. 1999) ................14

*Mora v. Chem-Tronics, Inc.,* 16 F.Supp.2d 1192, 1209 (S.D. Cal. 1998)..............12

*Morse v. ServiceMaster Global Holdings, Inc.,* No. C 10-00628 SI, 2011 U.S. Dist.
   LEXIS 65769, at *9 (N.D. Cal. June 21, 2011)....................................................21

Shoemaker v. Myers (1992) 2 CA4th 1407, 1418................................................20

**Statutes**

29 CFR 825.300(b)(1)............................................................................................13

29 CFR 825.300(c)(1)............................................................................................13

29 CFR 825.303(b) ...............................................................................................13

29 CFR 825.305(b) ...............................................................................................13

*California Health & Safety Code* section 114377 ................................................16

*California Labor Code* section 224 ............................................................. 17, 22

FRCP section 56(d)................................................................................................22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case arises out of an employment relationship where Plaintiff's former employer, Defendant, Shamrock Foods Company, terminated him in violation of public policy and in retaliation for his refusing to engage in and complaining about violations of law and requesting medical leave.

Plaintiff respectfully requests this Court deny Defendant's motion on the basis that material facts are in dispute as to Plaintiff's claims. Further, in the event the court is inclined to grant Defendant's motion, Plaintiff seeks additional discovery to obtain information necessary to fully oppose Defendant's motion and respectfully requests the motion be continued or denied to allow for the additional discovery as detailed below.

Material facts in dispute as detailed below and in Plaintiff's concurrently filed separate statement and declarations.

## I.   FACTUAL BACKGROUND

Plaintiff was re-hired by Defendant due to Plaintiff's skill sets and history of success for them. Reif Declaration ¶2. Plaintiff experienced successes in his second round of employment with Defendant as evidenced by the reviews dated March 7, 2012 and September 27, 2012. Reif Declaration ¶2 and Separate Statement Fact ("SS") Nos. 25-26. Plaintiff had one of his largest accounts cancel at no fault of his own. Reif Declaration ¶3 and SS No. 9.  Near that same time, another account had filed a lawsuit against Defendant also resulting in a lost account. Reif Declaration ¶3 and SS No. 9.  Naturally, this had an impact on Plaintiff's sales numbers. Reif Declaration ¶3 and SS No. 9.

Plaintiff's employment situation took a turn for the worse starting in about December 2012. Plaintiff began to voice concerns over some of Defendant's business practices, which he perceived to be unlawful. This included, but was not limited to, forcing employees to use personal vehicles for work without insuring

6

them, unauthorized sale of trans-fat margarine, requiring uncertified employees to illegally transport hazardous chemicals, and mandating that employees use vacation days on federal and state holidays. Reif Declaration ¶4 and SS No. 9.

Plaintiff's first problem occurred in or about December 2012. Plaintiff called Anderson to let him know that August Kennedy (another of Defendant's salesmen) had an order for the Spa Casino which was currently located at Defendant's Palm Desert office. Reif Declaration ¶5 and SS No. 9.  Plaintiff knew that Mr. Kennedy had been told that the Defendant's transportation department would deliver the order to the customer because Mr. Kennedy was going to be out of town that Saturday. Reif Declaration ¶5 and SS No. 9.   Anderson told Plaintiff that he would prefer that Plaintiff use his personal truck to deliver the order to the Spa Casino in lieu of having the transportation department make the trip. Reif Declaration ¶5 and SS No. 9.  Plaintiff did as he was told and made this delivery on a Saturday, a day he usually was not expected to work. Reif Declaration ¶6 and SS No. 9.  Plaintiff successfully made the delivery. Reif Declaration ¶6 and SS No. 9.However, when leaving the casino, the casino's automated gate struck Plaintiff's truck, causing damage. Reif Declaration ¶6 and SS No. 9.  Plaintiff made several calls and left several messages for Anderson about the incident and the damage to his truck. Reif Declaration ¶7 and SS No. 9.No calls were returned. Reif Declaration ¶7 and SS No. 9.

Plaintiff finally called Bob Savage, an employee in Defendant's Management, and told him about the damage done while delivering Defendant's food. Reif Declaration ¶8 and SS No. 9. Mr. Savage told Plaintiff that Defendant should fix the damage. Reif Declaration ¶7 and SS No. 9. Plaintiff gave the original estimate to Mr. Savage so Defendant could reimburse him for the damage to his vehicle. Reif Declaration ¶8 and SS No. 9. Plaintiff acquired an estimate from German Auto and Collision for the repair of the damage to his truck. Reif Declaration ¶8 and SS No. 9. The estimate came in at $2,780.00. Reif Declaration

¶8 and SS No. 9. Plaintiff provided the original estimate to Bob Savage through company interoffice mail. Reif Declaration ¶8 and SS No. 9. The estimate was picked up at the Palm Desert office and delivered to the Eastvale office for Bob Savage to arrange for reimbursing Plaintiff for the damage to Plaintiff's vehicle. Reif Declaration ¶8 and SS No. 9. Yet, Defendant never fixed Plaintiff's truck. Reif Declaration ¶8 and SS No. 9. Later, Jenkins told Plaintiff that Defendant would not fix any damage to his car and that "that's why you have insurance." Reif Declaration ¶9 and SS No. 9.

Next, in or about January 2013, Plaintiff received an email sent on behalf of Thax Turner, Defendant's Vice President of Sales. Reif Declaration ¶10 and SS No. 9. The email stated that all of Defendant's employees would be charged a vacation day for New Year's Day, January 1, 2013. Reif Declaration ¶10 and SS No. 9. Plaintiff then emailed Mr. Turner regarding this "charging" of a vacation day. Reif Declaration ¶10 and SS No. 9. Plaintiff told Mr. Turner that he had in fact worked on January 1, 2013, and that he shouldn't be charged for a vacation day where he actually worked. Reif Declaration ¶10 and SS No. 9. Mr. Turner responded to Plaintiff's email and wrote that he would not be charged for the vacation day because Plaintiff worked. Reif Declaration ¶11 and SS No. 9. Plaintiff then called Mr. Turner and expressed his concern that it he perceived it to be unlawful for Defendant to charge employees for a vacation day for days in which they actually worked – especially state and federal holidays. Reif Declaration ¶11 and SS No. 9. Mr. Turned told Plaintiff "not to worry" about something that didn't affect him. Reif Declaration ¶11 and SS No. 9. In December 2012, Plaintiff checked his vacation allotment on the company computer and found that he had at least 134 hours of vacation accrued. Reif Declaration ¶12 and SS No. 22. Then, after receiving Mr. Turner's email, Plaintiff checked his vacation hours on the company computer again and he had eight fewer vacation hours leading him to believe that Defendant had taken eight hours of vacation for the floating holiday on

January 1, 2013 even though he worked that day. Reif Declaration ¶12 and SS No. 22. Additionally, when Plaintiff received his final paycheck, he noticed that it was short by one vacation day. Reif Declaration ¶12 and SS No. 22. Again, in or about early January 2013, Plaintiff inquired if he was authorized to deliver an order of chemicals to a customer. Reif Declaration ¶13 and SS No. 9. These chemicals were hazardous and required someone who possesses a "hazmat certified" driver's license to transport them. Reif Declaration ¶13 and SS No. 9. The next day, the delivery driver left the chemicals at the Defendant's Palm Desert office because the Department of Transportation had routed them there. Reif Declaration ¶13 and SS No. 9. Plaintiff did not believe that he should transport these chemicals because he did not possess the required driver's license. Reif Declaration ¶13 and SS No. 9. Reif was trained through his prior employment with the nation's largest food distributor that as a sales person, he did not possess the required license to transport hazardous chemicals and it was grounds for immediate termination if a sales person at his prior company was caught transporting hazardous chemicals. Reif Declaration ¶13 and SS No. 9.  Reif was also trained to recognize the required hazardous chemical notation on the outside of the packaging and was aware that all hazardous chemical sales were accompanied with a Material Safety Data Sheet for the customer. Reif Declaration ¶13 and SS No. 9. Plaintiff called Chris Jenkins ("Jenkins") the North Regional Manager, to voice his concern about him transporting the chemicals without the proper license. Reif Declaration ¶14 and SS No. 9. Plaintiff told Jenkins that he was concerned that if the product were to spill, that Plaintiff would be responsible. Reif Declaration ¶14 and SS No. 9.  Jenkins provided no guidance or solution to Plaintiff, nor did he address the problem of Plaintiff's lack of licensure. Jenkins simply told Plaintiff, "Get it done." Reif Declaration ¶14 and SS No. 9.

In February 2013, Plaintiff sent an email to Michelle Hendricks, one of Defendant's buyers, asking her to contact the supplier regarding some of the

margarine that Plaintiff's customers were ordering. Reif Declaration ¶15 and SS No. 16.  Plaintiff made this request because the state of California requires that all margarine sold be "Trans-Fat Free." under California Health and Safety Code section 114377. Reif Declaration ¶15. Ms. Hendricks role for Defendant was to buy the food from outside suppliers that Defendant later sold to their customers. Reif Declaration ¶15. When Plaintiff emailed Hendricks about the margarine, he copied his superior, Bob Savage, into the email as well and stressed that Defendant's non-compliance with the law could result in fines to the company. Reif Declaration ¶16 and SS No. 16. Bob Savage responded that Plaintiff was correct and that Defendant needed to look into the situation. Reif Declaration ¶16. However, regardless of Mr. Savage's understanding, Plaintiff was later told by Thax Turner, Vice President of Sales, to "stop making waves and just sell it." Reif Declaration ¶16 and SS No. 33.

On or about Tuesday February 26, 2013, Plaintiff received a call from his wife. Reif Declaration ¶17. Plaintiff's wife told him that his step-daughter had just been diagnosed with Multiple Sclerosis. Reif Declaration ¶17.  Plaintiff was shocked, scared, worried, and concerned for his step-daughter's health. Reif Declaration ¶17.  According to the national Multiple Sclerosis Society, "Multiple Sclerosis ("MS") is an unpredictable, often disabling disease of the central nervous system that disrupts the flow of information within the brain, and between the brain and body." Reif Declaration ¶18.  After receiving this call, Plaintiff called a co-worker to cover Plaintiff's calls for the remainder of the day. Reif Declaration ¶18. After making sure that his accounts would be able to be serviced, Plaintiff called Jenkins, the Regional Manager. Reif Declaration ¶18 and SS No. 13. Plaintiff told Jenkins that he was going to take the rest of the day to care for his family as his daughter was just diagnosed with MS. Reif Declaration ¶19 and SS No. 13.  Plaintiff let Jenkins know that a co-worker was covering his accounts. Reif Declaration ¶20.  During this call, Plaintiff also told Jenkins that he will need

to take more time off of work because of his step-daughter's recent diagnosis and condition. Reif Declaration ¶20 and SS No. 13. Plaintiff also asked Jenkins how the Family Medical Leave Act ("FMLA") worked. Reif Declaration ¶20 and SS No. 13. Plaintiff said that he needs to take off time to care for his stepdaughter and he wanted to know if he could do that under the FMLA. Reif Declaration ¶20 and SS No. 13. Jenkins did not have any answers for Plaintiff at that time. Reif Declaration ¶21 and SS No. 29 Defendant never provided Plaintiff with a response to his inquiry regarding FMLA. Reif Declaration ¶21 and SS No. 29 Nor did Defendant provide Plaintiff with notice of his rights, responsibilities or the need for medical certification. Reif Declaration ¶21 and SS No. 29  Plaintiff did work the next day, February 27th and spent time at the following accounts and prospects: Desert Princess, Kobi, Fisherman's Market, Pierro's Pizza Vino, Sonoma Grille, Murph's Gaslamp. Reif Declaration ¶21 and SS No. 30. Plaintiff also spoke with Chris Jenkins about Sonoma Grille taking their first order on Saturday the 2nd. Reif Declaration ¶21 and SS No. 30. On Thursday, February 28th, Plaintiff did work as well and spent time with Sonoma Grille, Murph's, Kaiser Grill, Hog's Breath, Kaiser Palm Springs and Kaiser Palm Desert. Reif Declaration ¶22 and SS No. 30.

On February 28, 2013, only two (2) days after Plaintiff told Jenkins that he will take time off to take care of his daughter with MS, Jenkins called Plaintiff to ask what he was doing and to tell him to bring all of his company property to the office the next morning. Reif Declaration ¶22 and SS No. 31. Plaintiff asked if he was being terminated and Mr. Jenkins said he would not answer that to just bring all of Plaintiff's stuff the next day. Reif Declaration ¶23 and SS No. 31. The next day, March 1, 2013, Plaintiff was terminated. Reif Declaration ¶23 and SS No. 15. In a meeting with Mr. Jenkins, Plaintiff was told that Defendant waited to terminate his employment until the first of the month so that Plaintiff could keep his insurance for his step-daughter with MS. Reif Declaration ¶23 and SS No. 32.

1  This was especially suspect to Plaintiff because he did not have any health
2  insurance through Defendant. Reif Declaration ¶23 and SS No. 32.

3          Nonetheless, Defendant was fully aware of Plaintiff's daughter, her medical
4  diagnosis, and the reality that Plaintiff would take time off to care for her. Reif
5  Declaration ¶24 and SS No. 13.

6

7  **II.    LEGAL ARGUMENT**

8          **A. _Material Facts are in Dispute as to Plaintiff's Second and Third Causes_**
9              **_of Action Under FMLA/CFRA._**

10         Defendant argues that Plaintiff did not provide notice sufficient to invoke
11 FMLA/CFRA protections and that the decision to terminate him was made prior to
12 any statements regarding Plaintiff's step-daughter's condition were made.
13 However, Plaintiff maintains that his statements to his supervisor regarding his
14 step-daughter's condition along with his request for information regarding FMLA
15 were sufficient notice of his need to take FMLA leave.

16

17                 **1.    _Material Facts are in Dispute as to whether Plaintiff Provided_**
18                 **_the Necessary Notice of His Intent to Invoke FMLA Prior to His_**
19                 **_Termination._**

20         As cited by Defendant in the moving papers an employee's notice to an
21 employer invoking FMLA/CFRA protections needs only to be "sufficient to
22 reasonably apprise [the employer] of the employee's request to take time off for a
23 serious health condition." _Mora v. Chem-Tronics, Inc.,_ 16 F.Supp.2d 1192, 1209
24 (S.D. Cal. 1998). Further, federal regulations set forth the following notice
25 requirements: "An employee shall provide sufficient information for an employer
26 to reasonably determine whether the FMLA may apply to the leave request…When
27 an employee seeks leave for the first time for a FMLA-qualifying reason, the
28 employee need not expressly assert rights under the FMLA or even mention the

FMLA… The employer will be expected to obtain any additional required information through informal means." 29 CFR 825.303(b).

Also, the code lays out the requirement that "Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 CFR 825.300(c)(1). In addition, the law requires the employer notify employees if a medical certification is required. 29 CFR 825.305(b). Finally, the regulation provides that an employer must provide these notices within five business days of the time "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason…" 29 CFR 825.300(c)(1), 29 CFR 825.300(b)(1) and 29 CFR 825.305(b).

In this case, Plaintiff gave Shamrock sufficient notice of his intent to invoke FMLA leave when he spoke to his supervisor, Chris Jenkins, regarding his step-daughter's condition. SS No. 13. Plaintiff spoke to Mr. Jenkins in the morning of February 26, 2013 and informed him that his daughter had been diagnosed with multiple sclerosis. SS No. 13.  And Reif Depo Vol 1 (Sommer Decl. Ex. A) 195:23-196:25. In that same conversation, Plaintiff informed Mr. Jenkins that he would be needing to take time off and that he didn't know enough about FMLA and what he needed to do. Reif Depo Vol 1 (Sommer Decl. Ex. A) 196:22-25. After this conversation Plaintiff was instructed to take care of his daughter and call his supervisor the following day. Reif Depo Vol 1 (Sommer Decl. Ex. A) 197:1-2. After this conversation, Plaintiff was never provided notice of his rights and responsibilities with regard to FMLA leave. Further, Shamrock never requested medical certification after Plaintiff put them on notice of his need to take FMLA leave. While Shamrock argues that Plaintiff failed to follow company policy by informing human resources and providing medical certification, this argument does not take into consideration the employer's duty to notify the employee of their rights and responsibilities, which did not happen in this case.

Thus, although Plaintiff maintains his statements to his supervisor constituted sufficient notice to Shamrock, material facts are in dispute as to whether Reif provided sufficient notice of his need for FMLA leave and Plaintiff respectfully requests summary judgment be denied on that basis.

### 2. Material Facts are in Dispute as to whether there is a Causal Link Between Plaintiff's Request for CFRA Leave and His Termination and whether Plaintiff's Request for FMLA Leave was a Negative Factor in His Termination.

While argues that the decision to terminate Plaintiff was made prior to him notifying Mr. Jenkins of his step-daughter's condition and his need for leave, Plaintiff maintains that the evidence shows that Defendant made the decision to terminate Plaintiff after he gave notice. While the moving papers state that the decision to terminate was made a week before Plaintiff gave notice, there is no evidence cited in support of this proposition. *Moving Papers* 8:15-16. The only evidence cited in support of Defendant's argument is the declaration of Mr. Jenkins stating that he made the decision the day before Plaintiff gave notice. However, Plaintiff maintains that facts are in dispute as to when the decision to terminate him was made.

The Court in *Maurey v. Univ. of S. Cal.*, cited in the moving papers, lays out that, "Absent direct evidence of retaliation, -- the third element of a retaliation claim -- a causal link may be established by showing that the adverse employment decision occurred proximate in time to the protected activity, and that the person who made the adverse employment decision knew of the protected activity." *Maurey v. Univ. of S. Cal.*, 87 F.Supp. 2d 1021, 1033(C.D. Cal. 1999) citing *Miller v. Fairchild Industries, Inc.,* 797 F.2d at 731-32 (9th Cir. 1986). The *Maurey* Court goes on to note that, "timing of termination creates an inference of causation, where plaintiff filed complaint with human rights commission January 31 and was

fired February 9; triable issue of fact concerning whether employer's stated reason for discharge was pretextual precluded summary judgment." *Id.* citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1079 (9th Cir. 1997). While Plaintiff does not have direct evidence of the timing of the decision to terminate him, Plaintiff has significant circumstantial evidence refuting the declaration of his supervisor Mr. Jenkins submitted by Defendant.

First, Defendant asserts that their legitimate business reason for Plaintiff's termination was his poor performance. However, as detailed in the factual background above, this assertion does not take into account that Defendant hired Plaintiff back for a second term of employment based on his performance, that Defendant gave Plaintiff positive reviews in the two performance evaluations prior to his termination, or that prior to his termination, Plaintiff lost two of his largest accounts through no fault of his own. Further, In addition to facts being in dispute with regard to Plaintiff's performance, Defendant's proffered reasons for termination are suspect for several reasons. One significant piece of evidence drawing the inference that Plaintiff's termination was based in part on and caused by him invoking his rights under FMLA/CFRA is that Defendant communicated the decision of his termination two days after Plaintiff gave notice under FMLA/CFRA. Secondarily, although Defendant asserts the decision to terminate was made the day before he gave notice, evidence suggests that the decision was actually made the day after he gave notice. Defendant collected information to write Plaintiff's final paycheck including his remaining vacation, sick days, FPH and per diem mileage rate on February 27, 2013. Also, it is undisputed that Plaintiff worked a partial day on February 27, 2013 and a full day on February 28, 2013 before his supervisor communicated to him Defendant's decision to terminate him. If Defendant had in fact made the decision the day before he gave notice, there is no evidence to explain why they then waited several days to actually terminate him.  Finally, on January 30, 2013, Defendant then put Plaintiff on a

Performance Improvement Plan "PIP" setting out what was required of him over the following 30-days and how that would be measured. Then, several days before the end of those 30-days, Defendant made the determination that Plaintiff would be terminated based his net sales numbers being slightly under what was required by the PIP. Defendant's position also does not account for the fact that although Plaintiff's net sales number were slightly below expectations, his profit margin was above expectations making the profits to the company nearly equivalent to the goal set out in his PIP.

Thus, although Plaintiff maintains that the decision to terminate was made after he gave notice of his need for protected leave, material facts are in dispute as to when the decision was made to terminate him and Plaintiff respectfully requests summary judgment be denied on that basis.

**B. _Material Facts are in Dispute as to Plaintiff's Fourth Claim for Violation of Labor Code 1102.5._**

First as detailed above, Plaintiff maintains that Defendant's proffered reason for his termination was pretextual and based on the close proximity in time for all of Plaintiff's complaints and his termination along with the other evidence in support of pretext, Plaintiff maintains that he was terminated based on his protected acts under section 1102.5.

**1.    _Material Facts are in Dispute as to whether Plaintiff's Email Regarding Trans Fat Margarine was a Protected Activity and Related to His Termination._**

Plaintiff reasonably believed selling products containing trans fats to be a violation of law under _California Health & Safety Code_ section 114377. Plaintiff complained about the sale of these products and refused to participate in their sales. Plaintiff maintains that his complaints regarding these products led to his termination, but acknowledges that pursuant to the law cited in the moving papers,

16

this section of the code did not apply to Defendant and therefore his claim on this basis under Labor Code section 1102.5 cannot succeed.

### 2. *Material Facts are in Dispute as to whether Plaintiff's Manager Requesting He Deliver Chemical Products Resulted in Violation of Law.*

Plaintiff maintains that in addition to being educated at a former workplace that it was not legal for a person to transport hazardous materials without specific licensing, the Material Safety Data Sheets "MSDS" that were shipped along with the product also state the restrictions on the transportation of the chemicals. As detailed in the factual background above, Plaintiff's separate statement and his declaration, Plaintiff reasonably believed that some of the cleaning products he was asked to transport contained hazardous materials and he was not licensed to transport those materials. Plaintiff is not in possession of the MSDS for the chemicals he was asked to transport and additional discovery would be necessary to obtain this information.

Thus, although Plaintiff maintains that his complaints regarding Plaintiff delivering chemical products were a protected activity and related to his termination, material facts are in dispute as to this issue and Plaintiff respectfully requests summary judgment be denied on that basis.

### 3. *Material Facts are in Dispute as to whether Plaintiff Requesting that He Not Be Charged For a Floating Holiday on a Day He Was Working was a Protected Activity.*

Further, Plaintiff maintains that under *California Labor Code* section 224 it is a violation of law to withhold or divert any amount of an employee's pay unless expressly authorized. Additionally, as detailed above in the factual background and in the separate statement, Plaintiff complained to Defendant and refused to

participate in violations of section 224. Although Defendant argues that because Plaintiff was never actually charged for the floating holiday when he was working. However, as detailed in the factual background above, Plaintiff's separate statement and his declaration, Plaintiff not only complained about him being charged for the floating holiday, he also complained about other employees being charged for the floating holidays. Additionally, Plaintiff does claim that at the time of his termination, his pay was still short one vacation day.

Thus, although Plaintiff maintains that his complaints regarding being charged for a floating holiday were a protected activity and related to his termination, material facts are in dispute as to this issue and Plaintiff respectfully requests summary judgment be denied on that basis.

### C. *Material Facts are in Dispute as to Plaintiff's First Claim for Wrongful Termination in Violation of Public Policy.*

As detailed above and in Plaintiff's separate statement of disputed facts, Plaintiff maintains that he provided the necessary notice of his intent to invoke FMLA/CFRA leave prior to his termination and he was terminated within days of putting the company on notice. Further as detailed in the factual background above, Plaintiff's separate statement and his declaration, Plaintiff maintains that his complaints regarding Trans Fat products, transporting chemical products, being charged for floating holidays were protected activities and indemnification for damage to his truck were all protected complaints and led to his termination in violation of public policy. Further, his complaints were all made on the basis that he had a reasonable belief that Defendants were in violation of law or that he was seeking to assert his protected rights and therefore he falls within the protected class and his termination on that basis was in violation of public policy.

Finally, as detailed above, Plaintiff maintains that Defendant's proffered reason for his termination was pretextual and based on the close proximity in time

for all of Plaintiff's complaints and his termination along with the other evidence in support of pretext, Plaintiff maintains that he was terminated based on his protected acts of complaining and asserting his rights to leave and indemnification and he was then terminated in violation of public policy.

Thus, although Plaintiff maintains that he engaged in protected activities that lead to his termination, material facts are in dispute as to this issue and Plaintiff respectfully requests summary judgment be denied on that basis.

### D. *Material Facts are in Dispute as to Plaintiff's Fifth Cause of Action for Intentional Infliction of Emotional Distress*

#### 1. *Material Facts are in Dispute as to whether Plaintiff's IIED Claim is Preempted by the Workers Compensation Act.*

Defendant maintains that Plaintiff's Cause of Action for Intentional Infliction of Emotional Distress ("IIED") is preempted by the Worker's Compensation Act (Labor Code, § 3600 et seq.). It has been held, however, that the tort of IIED constitutes an entire class of civil wrongs outside the contemplation of the worker's compensation system, and that in the absence of allegations of disability compensable under the worker's compensation scheme a suit may be maintained seeking recovery for such damages. Hentzel v Singer Company (1982) 138 Cal.App.3d 290, 305.

In Hentzel, the Plaintiff alleged he was terminated for his attempts to obtain a reasonably smoke-free environment in which to work. Hentzel at 293. In determining whether the complaint states a cognizable claim under the Tameny principle, the court looked at whether it violated an express statutory objective or undermined a firmly established principle of public policy. Hentzel at 295-296 (emphasis added). Having found for Plaintiff in the cause of action for wrongful discharge, the court then reasoned that Plaintiff's IIED claim was "part of an entire

class of civil wrongs outside the contemplation of the worker's compensation system". Hentzel at 305.

Moreover, Employer actions that are contrary to public policy are not strictly limited to recovery under the WCA. Huffman v. Interstate Brands Cos. (2004) 121 CA4th 679, 695; Shoemaker v. Myers (1992) 2 CA4th 1407, 1418. In this case Plaintiff maintains as detailed above that his termination was based on his complaints and asserting his rights under leave laws and the labor code and therefore Defendant's tortuous acts are not preempted by the Workers compensation act.

Thus, although Plaintiff maintains that his claim for intentional infliction of emotional distress is not preemptend by the Workers Compensation Act, material facts are in dispute as to this issue and Plaintiff respectfully requests summary judgment be denied on that basis.

### 2. Material Facts are in Dispute as to whether Defendant's Conduct Rose to The Level of "Extreme and Outrageous Conduct."

As detailed in the factual background above, Plaintiff's separate statement and his declaration, that when Plaintiff complained about conduct he reasonably believed to be in violation of law and when he asserted his rights under leave laws and the labor code he was berated and told just to do his job and eventually terminated.

Thus, although Plaintiff maintains that Defendant's conduct rose to the level of extreme and outrageous conduct, material facts are in dispute as to this issue and Plaintiff respectfully requests summary judgment be denied on that basis.

### E. **Material Facts are in Dispute as to Plaintiff's Sixth Claim for Failure to Indemnify.**

As detailed in the factual background above, Plaintiff's separate statement and his declaration, in response to Plaintiff's claims that he incurred additional expenses as a result to damage to his truck while delivering product on behalf of the company. In response to his request for reimbursement, Plaintiff was told, "that's why you have insurance." Further, although Plaintiff provided Defendant with the estimate to fix his truck, Defendant never paid the cost of fixing Plaintiff's truck.

Defendant also argues that because they have fully reimbursed Plaintiff based on their formula for providing a monthly expense allowance. However, the law cited by Defendant states that while an employer can provide a formula to calculate an amount of expenses necessary to be reimbursed, "'the employee must be permitted to challenge the resulting reimbursement payment' if the amount paid turns out to be 'less than the actual expenses…necessarily incurred." *Morse v. ServiceMaster Global Holdings, Inc.,* No. C 10-00628 SI, 2011 U.S. Dist. LEXIS 65769, at *9 (N.D. Cal. June 21, 2011) citing *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007). Plaintiff informed Defendant that the amount of his reimbursement did not cover the damage to his truck and Defendant still did not pay for the damage to his truck.

Thus, although Plaintiff maintains Defendant failed to indemnify him for expenses incurred in the course of his employment, material facts are in dispute as to this issue and Plaintiff respectfully requests summary judgment be denied on that basis.

**F.** ***Material Facts are in Dispute as to Plaintiff's Seventh, Eighth and Ninth Claims for Labor Code Violations Based on Deducting a Floating Holiday.***

As detailed in the factual background above, Plaintiff's separate statement and his declaration, , Plaintiff maintains that under *California Labor Code* section 224 it is a violation of law to withhold or divert any amount of an employee's pay unless expressly authorized. Additionally, as detailed above in the factual background and in the separate statement, Plaintiff complained to Defendant and refused to participate in violations of section 224. Although Defendant argues that because Plaintiff was never actually charged for the floating holiday when he was working. However, as detailed in the factual background above, Plaintiff's separate statement and his declaration, Plaintiff not only complained about him being charged for the floating holiday, he also complained about other employees being charged for the floating holidays. Additionally, Plaintiff does claim that at the time of his termination, his pay was still short one vacation day.

Thus, although Plaintiff maintains that he was charged for a floating holiday on a day he was working, material facts are in dispute as to this issue and Plaintiff respectfully requests summary judgment be denied on that basis.

**G.** ***Additional Discovery is Necessary and Therefore Plaintiff Respectfully Requests Defendant's Motion be Denied.***

To fully support her claims at trial and oppose Defendant's Motion for Summary Judgment, Plaintiff needs additional discovery as detailed below. Pursuant to FRCP section 56(d), Plaintiff respectfully requests this court deny Defendant's motion on the basis that additional discovery is necessary to oppose this motion.

Additional discovery needed by Plaintiff to prove his claims includes the MSDS for the chemicals he was asked to transport. Amezcua-Moll Declaration ¶6.

PLAINTIFF PAUL REIF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
Case No.:  15-CV-00636-VAP-SP                    The Honorable Virginia Phillips, Courtroom 2

This information could be obtained through a request for production to Defendant and through an oversite this request was not included in Plaintiff's discovery. Amezcua-Moll Declaration ¶6. At the time discovery was propounded, another attorney at the firm currently representing Plaintiff propounded discovery and current counsel just now found the oversite because of the instant motion. Amezcua-Moll Declaration ¶6.

### III.   CONCLUSION

For the reasons contained herein, within the supporting documents, the court file and evidence and argument presented at the hearing on this matter, Plaintiff respectfully requests Defendant's Motion for Summary Judgment or in the alternative, Summary Adjudication be denied.

Dated: February 8, 2016                  AMEZCUA-MOLL & ASSOCIATES, P.C.

                                         BY    /S/ Sarah Nowels
                                               Rosemary Amezcua-Moll, Esq.
                                               Sarah J. Nowels, Esq.
                                               Attorney for Plaintiff, Paul Reif

23

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1122 East Lincoln Ave., Suite 203, Orange, CA 92865.

On February 8, 2016, I served the foregoing documents described herein as PLAINTIFF PAUL REIF'SOPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY, SUMMARY ADJUDICATION on the interested parties in this action by serving the following parties:

Andrew J. Sommer, State Bar No. 192844
CONN MACIEL CAREY LLP
870 Market Street, Suite 1111
San Francisco, California 94102
Telephone: (415) 268-8881
Facsimile: (415) 268-8881
asommer@connmaciel.com

Kara M. Maciel, Admitted *Pro Hac Vice*
CONN MACIEL CAREY PLLC
5335 Wisconsin Avenue, NW
Suite 660
Washington, DC 20015
Telephone: (202) 909-2730
Facsimile: (202) 827-7904
kmaciel@connmaciel.com

Attorneys for Defendant,
 SHAMROCK FOODS COMPANY

Attorneys for Defendant,
SHAMROCK FOODS COMPANY

☐   BY MAIL.  At Orange, CA, the envelope(s) was sealed and placed for deposit with the United States Postal Service, for collection and mailing on that date, following the firm's ordinary business practices. I am aware that on Motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

☐   BY FAX.  In addition to service by mail as set forth above, a copy of said document(s) were also delivered by facsimile transmission to the addressee pursuant to Code of Civil Procedure §1013(e).

☐   BY PERSONAL SERVICE.  I caused said document(s) to be hand-delivered to the addressee pursuant to Code of Civil Procedure §1011.

☐   BY EXPRESS MAIL. I caused said document(s) to be deposited in a box or other facility regularly maintained by the express service carrier providing overnight delivery pursuant to Code of Civil Procedure §1013(c).

☒   BY ELECTRONIC MAIL. I caused said document(s) to be delivered by electronic service pursuant to an agreement between the parties and Code of Civil Procedure §1010.6(a)(2).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 8, 2016, in Orange, California.

 /S/ Sarah Nowels
Sarah Nowels

PROOF OF SERVICE