1  Andrew J. Sommer, State Bar No. 192844
   CONN MACIEL CAREY LLP
2  870 Market Street, Suite 1111
   San Francisco, California 94102
3  Telephone: (415) 268-8881
   Facsimile: (415) 268-8881
4  asommer@connmaciel.com

5  Kara M. Maciel, Admitted *Pro Hac Vice*
   CONN MACIEL CAREY PLLC
6  5335 Wisconsin Avenue, NW
   Suite 660
7  Washington, DC 20015
   Telephone: (202) 909-2730
8  Facsimile: (202) 827-7904
   kmaciel@connmaciel.com

9
   Attorneys for Defendant,
10 SHAMROCK FOODS COMPANY

11
                    UNITED STATES DISTRICT COURT
12
                   CENTRAL DISTRICT OF CALIFORNIA
13

14
   PAUL REIF, an individual,              CASE NO. 5:15-cv-00636 VAP-SP
15
                Plaintiff,                **REPLY TO PLAINTIFF'S**
16                                         **RESPONSE TO SEPARATE**
        v.                                 **STATEMENT OF UNDISPUTED**
17                                         **MATERIAL FACTS IN SUPPORT**
   SHAMROCK FOODS COMPANY,                 **OF DEFENDANT SHAMROCK**
18 INC., an Arizona Corporation; and       **FOODS COMPANY'S MOTION**
   DOES 1 to 100, inclusive,               **FOR SUMMARY JUDGMENT, OR**
19                                         **IN THE ALTERNATIVE, PARTIAL**
                Defendants.                **SUMMARY JUDGMENT**
20
                                           Date:        February 29, 2016
21                                         Time:        2:00 P.M.
                                           Dept:        2
22                                         Judge:       Hon. Virginia A. Phillips
23                                         Removal Date: April 2, 2015
                                           Trial Date:   April 19, 2016
24

25

26

27

28

1    Defendant Shamrock Foods Company hereby submits their reply to

2  Plaintiff's response's to Defendant's Separate Statement of Undisputed Material

3  Facts in Support of its Motion for Summary Judgment, or in the alternative, Partial

4  Summary Judgment.

5

6  **I.   SECOND CAUSE OF ACTION: RETALIATION FOR**
   **EXERCISING FAMILY MEDICAL LEAVE ACT RIGHTS**

7

| Def.'s SUF No. | DEFENDANT'S STATED FACTS AND EVIDENCE | PLAINTIFF'S RESPONSE AND STATED FACTS | DEFENDANT'S REPLY |
|---|---|---|---|
| 1. | On August 10, 2011, Paul Reif commenced employment as an account executive at Shamrock Foods Company's ("Shamrock" or "the Company") new branch operations in Southern California.<br><br>Deposition of Paul Reif, Vol. 1 (Ex. A)("Reif Depo, Vol. 1"), 47:23-48:04, Ex 1.; Declaration of Chris Jenkins ("Jenkins Dec"), ¶ 2. | Undisputed. | Plaintiff does not dispute this fact. |
| 2. | As an account executive, Mr. Reif understood that he was responsible for identifying prospective customers and opening new business.<br><br>Reif Depo, Vol. 1 (Ex. | Undisputed. | Plaintiff does not dispute this fact. |

1

| | | | | |
|---|---|---|---|---|
| | | A), 58:34-59:08; Jenkins Dec., ¶ 2. | | |
| | 3. | In October 2012, Mr. Reif's then supervisor, Mike Anderson, gave Reif his sales budget for the 2013 fiscal year, which provided goals of $119,600 in customer net sales for November 2012, $103,600 in net sales for December 2012, $113,400 in net sales for January 2013, and $116,000 in net sales for February 2013.<br><br>Deposition of Paul Reif, Volume 2 (Ex. B)("Reif Depo Vol. 2"), 223:19-224:09, Ex. 21; Jenkins Dec, ¶ 3. | Undisputed. | Plaintiff does not dispute this fact. |
| | 4. | In the fall of 2012, the sales revenue generated on Mr. Reif's existing accounts was significantly declining and he was not opening new accounts to increase this revenue.<br><br>Deposition of Chris Jenkins (Ex. D) ("Jenkins Depo"), 16:02-12, 17:04-11, 19:25-20:23, 21:21-25, 22:05-23. | Disputed. In the fall of 2012, Plaintiff lost two of his largest accounts through no fault of his own. Reif Declaration 3. | The purported evidence that Plaintiff cites is inadmissible (see evidentiary objections, item no. 2), but in any case, it does not contradict this fact.  Thus, this fact should be deemed undisputed, pursuant to L.R. 56-3. |

2

| 5. | As of his September 27, 2012 performance appraisal, Mr. Reif understood that Mr. Anderson had set as a high priority the immediate goal of opening two new accounts per month.<br><br>Reif Depo Vol. 1 (Ex. A), 76:21-77:03, 77:20-80:23, Ex. 5. | Undisputed. | Plaintiff does not dispute this fact. |
|----|----|----|----|
| 6. | On December 7, 2012, Mr. Anderson met with Mr. Reif to discuss his failure to reach the sales goals and open new accounts since his September 27, 2012 performance appraisal.<br><br>Reif Depo Vol. 1 (Ex. A), 142:12-143:08, 146:19-25. 147:04-148:11. | Undisputed. | Plaintiff does not dispute this fact. |
| 7. | In December 2012, Mr. Reif's sales budget was $103,660, but he generated only $76,947 in net sales.<br><br>Jenkins Dec, ¶¶ 3, 6, and 8; Reif Depo, Vol. 1 (Ex. A), 129:16-18, 133:29-134:08, Ex. 16. | Undisputed. | Plaintiff does not dispute this fact. |

3

| | | | |
|---|---|---|---|
| 8. | In January 2013, Mr. Reif's sales budget was $113,400, but he generated only $44,530 in net sales.<br><br>Jenkins Dec., ¶¶ 3, 6, and 8. | Undisputed. | Plaintiff does not dispute this fact. |
| 9. | As a result of Mr. Reif's sliding sales performance, Reif was placed on a performance improvement plan ("PIP") on January 30, 2013.<br><br>Jenkins Depo (Ex. D), 24:23-25:02, 25:16-21, Ex. 45; Reif Depo Vol. 1 (Ex. A), 129:16-21, 131:24-132:10, Ex. 16. | Disputed.  Plaintiff was placed on a PIP due to his numerous complaints. Plaintiff's Decl. ¶¶4-14.  Plaintiff was not performing poorly, (sic) to the contrary, at no fault of Plaintiff's, he lost two sizeable accounts which resulted in lower sales. Plaintiff's Decl. ¶3 | The purported evidence that Plaintiff cites is largely inadmissible (see evidentiary objections, item nos. 3-13), but it does not contradict this proffered fact.  Thus, this fact should be deemed undisputed, pursuant to L.R. 56-3 and the Court's Standing Order (5:20-23).<br><br>Plaintiff's claim that he was "not performing poorly" when the PIP issued is not supported by any admissible evidence. He relies on an excerpt from his declaration (Reif Dec., ¶ 3 ["I had one of my largest accounts cancel at <u>no fault of my own</u>")(emphasis), which is an improper opinion lacking in foundation and does not undermine the |

| | | | | |
|---|---|---|---|---|
| | | | | Company's reason for issuing the PIP. Indeed, Mr. Reif admits in his response that he had lower sales at that time. |
| 10. | On February 6, 2013, when meeting with Mr. Reif to discuss the PIP, his then supervisor Chris Jenkins explained that Shamrock had significantly lowered his February sales budget from $116,000 to $65,000, and that he was expected to reach his sales budget and to ship three new accounts in February 2013.<br><br>Reif Depo, Vol. 1 (Ex. A), 133:11-134:17, 136:15-23, 138:10-15. | Undisputed. | | Plaintiff does not dispute this fact. |
| 11. | On February 25, 2013, after it became apparent that Reif would not meet this reduced sales goal of $65,000 and ship three new accounts that month, Shamrock decided to terminate his employment.<br><br>Jenkins Dec., ¶¶ 6, and 7; Reif Depo, Vol. 1 (Ex. A), | Disputed. Defendant prepared Plaintiff's final check on February 27, 2013. Decla. Of Rosemary Amezcua-Moll, Exhibit "A" | | The purported evidence does not contradict this fact. It is an undisputed fact that, in consultation with Shamrock management, Mr. Jenkins made the decision to terminate Plaintiff's employment on February 25, 2013. (Jenkins Dec., ¶ 7.). It is further |

| | | | |
|---|---|---|---|
| | 161:23-163:06 | | undisputed that the following day, on February 26, the Company's human resources completed the termination report and requested Plaintiff's final paycheck. (Hergert Dec., ¶6). Thus, this fact should be deemed undisputed, pursuant to L.R. 56-3 and the Court's Standing Order (5:20-23). |
| 12. | Reif's final paycheck was requested and the termination paperwork was completed the next day, on February 26, 2013.<br><br>Declaration of Monica Hergert ("Hergert Dec"), ¶ 6. | Disputed. Defendant prepared Plaintiff's final check on February 27, 2013. Decla. Of Rosemary Amezcua-Moll, Exhibit "A" and Exhibit "C" | The purported evidence is inadmissible and regardless, it does not contradict this fact.  It is undisputed that on February 26, the Company's human resources completed the termination report and requested Plaintiff's final paycheck. (Hergert Dec., ¶6). Thus, this fact should be deemed undisputed, pursuant to L.R. 56-3 and the Court's Standing Order (5:20-23). |
| 13. | After Shamrock made the termination decision, but before it was communicated to Mr. Reif, Mr. Reif called Mr. Jenkins to inform him that Mr. | Disputed. Defendant prepared Plaintiff's final check on February 27, 2013. Decla. Of Rosemary Amezcua-Moll, Exhibit "A" and | The purported evidence is inadmissible and regardless, it does not contradict this fact.  It is an undisputed fact that, in consultation |

| | | | |
|---|---|---|---|
| | Reif's daughter was just diagnosed with multiple sclerosis and that he would take off the next day, February 27, 2013.<br><br>Reif Depo Vol. 1 (Ex. A), 195:23-196:25; Jenkins Dec, ¶ 7. | Exhibit "C" | with Shamrock management, Mr. Jenkins made the decision to terminate Plaintiff's employment on February 25, 2013. (Jenkins Dec., ¶ 7.). It is further undisputed that the following day, on February 26, the Company's human resources completed the termination report and requested Plaintiff's final paycheck.  (Hergert Dec., ¶6). Thus, this fact should be deemed undisputed, pursuant to L.R. 56-3 and the Court's Standing Order (5:20-23). |
| 14. | Mr. Reif never contacted Shamrock's Human Resources Department to request a medical leave of absence, nor did he provide a medical certification seeking family medical leave, as required under company policy.<br><br>Reif Depo, Vol. 1 (Ex. A), 199:21-200:14; Reif Depo Vol. 2 (Ex. B), 264:11-15; Hergert Dec., ¶ 3, Ex. | Reif also notified Defendant that he would need leave to care for his daughter. Reif Depo Vol. 1 (Ex. A), 195:23-196:25 | The purported evidence does not contradict this material fact. Thus, this fact should be deemed undisputed, pursuant to L.R. 56-3 and the Court's Standing Order (5:20-23).<br><br>Plaintiff's statement that "Plaintiff also notified Defendant that he would need leave to care for his daughter" is not |

| | | | |
|---|---|---|---|
| | A. | | supported by admissible evidence and in any case it does not create a genuine dispute. (Emphasis).<br><br>In his prior deposition, Mr. Reif testified that he told Mr. Jenkins his daughter was just diagnosed with MS and that he did not request a leave of absence of any duration. Rather, Plaintiff testified that on February 27 he told Mr. Jenkins "…that at the time I didn't know how much time I was – **if any**, I was going to need to take off…." Reif Depo, Vol. 1 (Ex. A), 200:15-23 (emphasis). |
| 15. | On March 1, 2013, in a meeting with Chris Jenkins and Thax Turner, Mr. Reif was informed of his termination.<br><br>Reif Depo, Vol. 2 (Ex. B), 267:25-270:03. | Undisputed. | Plaintiff does not dispute this fact. |

## II.    THIRD CAUSE OF ACTION: RETALIATION FOR EXERCISING CALIFORNIA FAMILY RIGHTS ACT RIGHTS

Defendant incorporates by reference SUF, Nos. 1 to 15.

8

## III.  FOURTH CAUSE OF ACTION: VIOLATION OF LABOR CODE SECTION 1102.5(c)

Defendant incorporates by reference SUF, Nos. 1 to 12, and 15.

| Def.'s SUF No. | DEFENDANT'S STATED FACTS AND EVIDENCE | PLAINTIFF'S RESPONSE AND STATED FACTS | DEFENDANT'S REPLY |
|---|---|---|---|
| 16. | On February 11, 2013, Reif emailed Shamrock's purchasing manager David Cloud, indicating that the margarine in stock contained trans fat and requesting to stock zero trans fat margarine.<br><br>Reif Depo (Ex. B), Vol 2, 234:07-237;14, Ex. 24; David Cloud Dec., ¶ 2, Ex. A. | Undisputed. | Plaintiff does not dispute this fact. |
| 17. | Mr. Cloud immediately responded by email to Shamrock buyer, Michelle Hollis, two minutes later on February 11, 2013, instructing her to cancel orders to California of the margarine product contains trans fat, to move the trans fat margarine out of state to the Company's Phoenix warehouse, | Undisputed. | Plaintiff does not dispute this fact. |

9

| | | | |
|---|---|---|---|
| | and to place a "proprietary lock" in the ordering system to prevent any future order of the trans fat margarine for shipment to the California warehouse.<br><br>David Cloud Dec., ¶ 2, Ex. A. | | |
| 18. | Mr. Cloud followed up to ensure the purchase of trans fat margarine was discontinued.<br><br>David Cloud Dec., ¶ 2; Deposition of Alan Heitkamp (Ex. C) ("Heitkamp Depo"), 35:25-36:16. | Undisputed. | Plaintiff does not dispute this fact. |
| 19. | In about December 2012, Mr. Reif's manager requested that he personally deliver dishwasher soap and a cleaning product to a customer.<br><br>Reif Depo, Vol. 1 (Ex. A), 178:20-181:15, 183:17-184:09, 184:13-24. | Undisputed | Plaintiff does not dispute this fact. |
| 20. | Mr. Reif never refused his supervisor's instruction to deliver the dishwasher soap and cleaning product. | Undisputed. | Plaintiff does not dispute this fact. |

10

| | | | | |
|---|---|---|---|---|
| | | Reif Depo, Vol. 1 (Ex A), 184:13-24. | | |
| 21. | | On January 7, 2013, Mr. Reif requested that his manager not charge a floating holiday on a day when he claimed to have been working.<br><br>Reif Depo Vol. 1 (Ex. A), 187:02-188:04; Reif Depo, Vol. 2 (Ex B), 265:08-266:08, Ex. 29. | Undisputed. | Plaintiff does not dispute this fact. |
| 22. | | Reif was not charged a floating holiday on the day he claimed to have been working.<br><br>Hergert Dec, ¶ 5. | Disputed.  Reif was charged 8 hours of his vacation time for the January 1, 2013 floating holiday even though he actually worked that day.  Reif Declaration ¶¶10-12. | Plaintiff seems to confuse paid vacations and floating holidays, both of which he would have accrued during his employment with Shamrock.  He testified in deposition that he was deducted a floating holiday when he worked on January 1, 2013.  (Reif Depo, Vol 1 (Ex. A), 188:02-04.  However, the Company's human resources confirmed, from review of Shamrock's time off management program, that Mr. Reif was not deducted a floating holiday on January 1, 2013, and Mr. Reif has not offered any admissible evidence |

11

| | | | to contradict this fact. Hergert Dec., ¶ 5; Reif Depo, Vol. 1 (Ex A), Ex. 7 (pp. 38 to 40). Accordingly, this fact should be deemed undisputed, pursuant to L.R. 56-3 and the Court's Standing Order (5:20-23). |
|---|---|---|---|

## IV.   FIRST CAUSE OF ACTION: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Defendant incorporates by reference SUF Nos. 1 to 22.

## V.   FIFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant incorporates by reference SUF Nos. 1 to 22.

## VI.   SIXTH CAUSE OF ACTION: VIOLATION OF LABOR CODE SECTION 2802

| Def.'s SUF No. | DEFENDANT'S STATED FACTS AND EVIDENCE | PLAINTIFF'S RESPONSE AND STATED FACTS | DEFENDANT'S REPLY |
|---|---|---|---|
| 23. | During Mr. Reif's employment with Shamrock, the Company provided California account executives a monthly payment of $1,250.00 as an expense allowance to cover expenses associated with using their personal vehicles for | Undisputed. | Plaintiff does not dispute this fact. |

| | | | |
|---|---|---|---|
| | work purposes.<br><br>Hergert Dec., ¶ 4. | | |
| 24. | The Company assessed what the highest number of miles an account executive would likely travel in a new territory, multiplied this by the IRS mileage reimbursement rate and added additional dollars to this to come up with a figure of $1,250.00 per month that would be paid to each account executive.<br><br>Hergert Dec., ¶ 4. | Undisputed. | Plaintiff does not dispute this fact. |

**VII.   SEVENTH CAUSE OF ACTION: VIOLATION OF LABOR CODE SECTION 224**

Defendant incorporates by reference SUF, Nos. 21 and 22.

**VIII.  EIGHTH CAUSE OF ACTION: VIOLATION OF LABOR CODE SECTION 201**

Defendant incorporates by reference SUF, Nos. 21 and 22.

**IX.   NINTH CAUSE OF ACTION: VIOLATION OF LABOR CODE SECTION 226**

Defendant incorporates by reference SUF Nos. 21 and 22.

///

///

13

## X.   PLAINTIFF'S PURPORTED ADDITIONAL FACTS

Plaintiff has scattered throughout his response what appear to be purported additional facts. These additional facts should be disregarded because they do not comply with the Court's Standing Order, which requires that a party opposing the summary judgment motion insert additional undisputed facts in a separate table at the end of the moving party's statement of undisputed facts.  Nonetheless, Defendant has substantively responded to these purported additional facts separately below.

| Pl's SS No. | PLAINTIFF'S STATED FACTS AND EVIDENCE | DEFENDANT'S RESPONSE |
|---|---|---|
| 25. | Plaintiff received a total score of 71 on his March 7, 2012 Performance Evaluation which is equivalent to at least an "A-" per Defendant's internal scoring system.<br><br>Decla. Of Rosemary Amezcua-Moll, Exhibit "D" | This purported fact is not supported by admissible evidence (see evidentiary objections, item no. 25). Nevertheless, Mr. Reif's job performance in March 2012, however he characterizes it, does not create a genuine dispute.  It is undisputed that in the fall of 2012, Mr. Reif's sales revenue significantly declined, resulting in the issuance of the performance improvement plan.  See SUF, No. 4. |
| 26. | Plaintiff received a total score of 62 on his September 27, 2012 Performance Evaluation which is equivalent to at least a "B+" per Defendant's internal scoring system.<br><br>Reif Depo Vol. 1 (Ex. A) to Sommer Declaration, Ex. 5. | This purported fact is not supported by admissible evidence (see evidentiary objections, item no. 22). Nevertheless, this purported fact does not create a genuine dispute.  In the fall of 2012, after this evaluation, Plaintiff's sales revenue significantly declined.  See SUF No. 4.  Plaintiff did not meet his sales goals over the next quarter, resulting in the issuance of the performance improvement plan. |

| | | | See SUF, Nos. 3 to 9. |
|---|---|---|---|
| | 27. | The PIP that Plaintiff was placed on was entitled "Performance Improvement Plan – 30 Day Requirements."  Defendant set the expectation of Plaintiff that he had a total of 30 days to complete the goals set on the PIP.<br><br>Reif Depo Vol. 1 (Ex. A) to Sommer Declaration, Ex.16 | This purported fact is not supported by the cited evidence. As reflected on Exhibit 16, the performance improvement plan was issued on January 30, 2013, and indicated that "We will meet again to cover the results and next steps on March 1st, 2013." |
| | 28. | Plaintiff was terminated prior to the expiration of the 30 day PIP.<br><br>Decla. Of Rosemary Amezcua-Moll, Exhibit "A" and Exhibit "C" | This purported fact is not supported by the cited evidence. Mr. Reif was notified of his termination on March 1, 2013, which was the date represented in the PIP to discuss "next steps". |
| | 29. | Defendant never provided Plaintiff with notice of his rights and responsibilities or the need for medical certification under leave laws.<br><br>Reif Declaration ¶21. | Mr. Reif's declaration directly contradicts, without explanation, his prior deposition testimony, and thus it must be disregarded. Mr. Reif acknowledges that he received upon hire the Company's employee handbook containing notice of his rights and obligations under the FMLA/CFRA and stating the expectation that he "contact Human Resources to obtain the necessary forms and to receive instructions and additional information."  Reif Depo, Vol 1 (Ex. A), 49:08-16, Exs. 3 and 7; Hergert Dec, ¶ 3.  He was similarly informed by the handbook that when seeking leave to care for a sick child, spouse or parent to provide a certification from a health care provider.  *Ibid.* |

15

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5 | 30. | After caring for his daughter, Plaintiff returned to work for a partial day on February 27, 2013 and a full day on February 28, 2013.<br><br>Reif Declaration ¶21 | This purported fact does not create a genuine dispute. Plaintiff did not request FMLA-qualifying leave prior to the termination decision. (See SUF, nos. 11, 13). |
| 6<br>7<br>8<br>9<br>10<br>11<br>12 | 31. | On February 28 2013, Mr. Jenkins called Plaintiff to tell him to bring all of his Company property to the office the following morning, but when asked if Mr. Jenkins was terminating Plaintiff, Mr. Jenkins refused to respond.<br><br>Reif Declaration ¶-22-23 | This purported additional fact, specifically whether Reif was informed in advance of his termination, does not create a genuine dispute. |
| 13<br>14<br>15<br>16<br>17<br>18 | 32. | Mr. Jenkins informed Plaintiff at the meeting that they waited to terminate him so that he could keep his insurance for his step-daughter for another month, but Plaintiff did not have insurance through Defendant.<br><br>Reif Declaration ¶23 | This purported fact does not create a genuine dispute. If Mr. Reif is claiming the reference to his step-daughter is a stray remark, that remark does not as a matter of law support the FMLA/CFRA claim since it does not evidence any discriminatory animus. |
| 19<br>20<br>21 | 33. | With regard to Plaintiff's complaints about trans fats in products Mr. Turner told him to, "stop making waves and just sell it." | This purported fact is not supported by any evidence and therefore it must be disregarded, pursuant to L.R. 56-3 and the Court's Standing Order (5:20-23). |
| 22<br>23<br>24<br>25<br>26<br>27<br>28 | 34. | Plaintiff informed Defendant that his expense allotment was not enough to cover the expenses incurred based on his damaged truck and was never reimbursed.<br><br>Reif Declaration ¶ 8-9. | This purported fact does not create a genuine dispute. Under the case law, the employee may challenge the reimbursement payment "if the amount turns out to be less than the actual expenses…necessarily incurred." *Morse v. ServiceMaster Global Holdings, Inc.*, No. C10-00628 SI, 2011, 2011 U.S. Dist. LEXIS |

REPLY TO PLAINTIFF'S SEPARATE STATEMENT ISO MSJ; CASE NO. 5:15-CV-00636-VAP-SP

| | | 65769, at *9 (N.D. Cal. June 21, 2011). Here, however, Reif has not challenged that his $1,250 monthly allowance (amounting to $30,000 in two years) adequately covered his actual work-related travel expenses, and in discovery, he has indicated he has no information or documents to support his failure to indemnify claim. See answer to Interrogatory No. 3, Set Two (Ex. F); response to Request for Production No. 2, Set Two (Ex. G). |
|---|---|---|

DATED: February 12, 2016                    CONN MACIEL CAREY LLP


                                    By:   /s/ Andrew J. Sommer
                                          Andrew J. Sommer
                                          Attorneys for Defendant
                                          SHAMROCK FOODS COMPANY

17