UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION                                    JS-6

Paul Reif,

                              Plaintiff,              EDCV 15-636-VAP (SPx)

                v.                                   ORDER GRANTING
                                                     DEFENDANT'S MOTION FOR
Shamrock Foods Company, Inc. et al.,                 SUMMARY JUDGMENT

                              Defendants.

Before the Court is Defendant Shamrock Foods Company, Inc.'s ("Defendant")
Motion for Summary Judgment.[1] (Doc. No. 37, "Motion".)  Plaintiff Paul Reif
("Plaintiff") filed his Opposition on February 8, 2016.  (Doc. No. 43,
"Opposition.")  Defendant filed its reply on February 16, 2016.  (Doc. No. 48,
"Reply.")  After reviewing all the papers filed in support, and in opposition to, the
Motion, the Court GRANTS the Motion.

## I.    BACKGROUND

Plaintiff filed his Complaint in the Superior Court of California, County of
Riverside, on February 27, 2015.  (Doc. No. 1, "Complaint.")  Plaintiff alleges he
was employed by Defendant from August 10, 2011 until February 2013, and was
discharged for voicing concerns over some of Defendant's business practices,

---

[1] It is not clear from Defendant's Motion and Plaintiff's Opposition whether Defendant satisfied the "meet and confer" requirement under Local Rule 7-3.  The Court cautions counsel that future failure to abide by the local rules may result in the imposition of sanctions.

including forcing employees to use personal vehicles for work without providing vehicle insurance, selling trans-fat margarine, requiring uncertified employees to illegally transport hazardous chemicals, and mandating that employees use vacation days on federal and state holidays.  (Id. at 3-6.)  Plaintiff also contends Defendant discharged him for requesting leave under the Family Medical Leave Act ("FMLA"), to take care of his stepdaughter, who was diagnosed with multiple sclerosis.  (Id.)

Plaintiff's Complaint asserts nine claims for relief: (1) wrongful termination under the FMLA and the California Family Rights Act, California Government Code § 12945.2(f) ("CFRA"); (2) retaliation for exercising his rights under the FMLA; (3) retaliation for exercising his rights under the CFRA; (4) retaliation under California Labor Code section 1102.5 for refusing to participate in Defendant's business activities that would have resulted in violations of state statutes; (5) intentional infliction of emotional distress; (6) failure to indemnify Plaintiff for a car accident that occurred in the course of his employment under California Labor Code section 2802; (7) making unauthorized wage deductions in violation of California Labor Code section 224; (8) compensation for all time worked, including January 1, 2013, for which Plaintiff contends he was not compensated in violation of California Labor Code section 201; (9) failure to provide accurate wage statements in violation of California Labor Code section 226.  (See generally id.)

## II.   EVIDENTIARY RULINGS

Before setting forth the uncontroverted facts, the Court examines the admissibility of the evidence offered by both sides in support of, and opposition to, the Motion for Summary Judgment.  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).  At this stage, however, a district court should "focus on the admissibility of the [evidence's] contents," "not . . . on the admissibility of [its] form."  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001).  Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment.  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).  Plaintiffs did not file any evidentiary objections.

Defendant submitted twenty-five evidentiary Objections.  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant."  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").  Thus the Court does not consider any objections on the grounds that evidence lacks foundation, is speculative, or is irrelevant.  "On this basis alone, the Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact."  Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013).  The Court thus OVERRULES Objections 1-

3

4, 6, 11-12, 19-25.  With respect to the remaining objections – Objection 7, 8, 9 13, 14-18 – the Court does not rely on the objected-to statements.  To the extent the Court does not rely on the statements, Plaintiffs' objections are OVERRULED as moot.

## A.  Defendant's Fifth Objection

Defendant's fifth Objection is to Plaintiff's statements concerning the estimate he received from the mechanic when his car was damaged.  Defendant contends that such statements violate the Rule 1002 of the Federal Rules of Evidence, the "Best Evidence Rule," because Plaintiff "seeks to prove the content of this writing through testimony."  (Defendant's Objections to Plaintiff's Evidence, Doc. No. 47, at 1.)

Under this Rule, "[a]n original writing, recording, or photograph is required in order to prove its content."  Fed. R. Evid. 1002.  Plaintiff did not submit into evidence the estimate he received from German Auto Collision.  Therefore, Plaintiff cannot corroborate the content of this document, and his statements as to the contents of the vehicle estimate are inadmissible.

Plaintiff also cannot meet any of the exceptions under the Best Evidence Rule. Evidence other than the writing itself is admissible if:

> (a) all the originals are lost or destroyed, and not by the pro-
> ponent acting in bad faith;
>
> (b) an original cannot be obtained by any available judicial
> process;

> (c) the party against whom the original would be offered had
> control of the original; was at that time put on notice, by plead-
> ings or otherwise, that the original would be a subject of proof at
> the trial or hearing; and fails to produce it at the trial or hearing;
> or
>
> (d) the writing, recording, or photograph is not closely re-
> lated to a controlling issue.

Fed. R. Evid. 1004.  Plaintiff claims he sent the original estimate to Defendant (Opposition at 8), but has provided no evidence showing that the original estimate was lost or destroyed, or that Defendant failed to respond to a subpoena requesting a copy of the estimate.  Additionally, Plaintiff did not properly put Defendant on notice that the original would be a subject of proof at the trial or at a hearing. (Declaration of Andrew J. Sommer, Ex. E at 4-5.)  Defendant's fifth Objection is SUSTAINED.

## B.  Defendant's Ninth Objection

Similarly, Defendant's ninth Objection is to Plaintiff's statements concerning when he checked his vacation allotment on his computer in December 2012 and in January 2013, which Defendant also contends violate the Best Evidence Rule.  (Id. at 4-5.)  Plaintiff did not submit into evidence a printout of his vacation allotment from his computer in December 2012.

Again, none of the exceptions to the Best Evidence Rule apply.  Plaintiff has no explanation as to why he has not produced the printout of his vacation allotment from his computer in December 2012.  Plaintiff has not indicated that the original

was lost, or that it was unavailable through judicial process.  Fed. R. Evid. 1004.
Accordingly, Defendant's ninth Objection is SUSTAINED.

### III.   LEGAL STANDARD

A motion for summary judgment or summary adjudication shall be granted
when there is no genuine issue as to any material fact, and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party must show that "under
the governing law, there can be but one reasonable conclusion as to the verdict."
<u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to
summary judgment.  <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail
Clerks Union Local 648 v. Hub Pharm., Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).
The moving party bears the initial burden of identifying the elements of the claim or
defense and evidence that it believes demonstrates the absence of an issue of
material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party
need not produce evidence negating or disproving every essential element of the
non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.  Instead, the moving party's
burden is met by pointing out that there is an absence of evidence supporting the
non-moving party's case.  <u>Id.</u>

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., v. Fritz Co., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything."  Id. at 1103.

If the moving party carries its burden of production, however, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256; Nissan Fire, 210 F.3d at 1103.  The non-moving party must make an affirmative showing on all matters in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

# IV.   FACTS

To the extent certain facts or conclusions are not mentioned in this Order, the Court has not relied on them in reaching its decision.  In addition to considering the evidentiary objections raised by the parties, the Court has considered independently the admissibility of the evidence that both parties submitted and has not considered facts that are irrelevant or inadmissible evidence.

## A.  Uncontroverted facts

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  See L.R. 56-3.

On August 10, 2011, Plaintiff started working at Defendant's new branch of operations in Southern California as an account executive.  (Deposition of Paul Reif, Vol. 1 ("Reif Dep. Vol. 1") at 47:23-48:04.)

Throughout Plaintiff's employment, Defendant provided account executives a monthly payment of $1,250.00 as an expense allowance to cover expenses incurred when using their personal vehicles for work purposes.  (Declaration of Monica Hergert ("Hergert Decl.") at ¶ 4.)  To establish the amount executives would be paid, Defendant identified the highest number of miles an account executive would likely travel in a new territory, multiplied that by the IRS mileage reimbursement rate, and then added additional money to cover each account executive's expenses. (Id.)

While employed by Defendant, Plaintiff's car was damaged during a delivery. (Paul Reif. Decl. ("Reif Decl.") at ¶ 6.)  Plaintiff obtained an estimate from German Auto and Collision for the repair of the damage to his truck.  (Id. at ¶ 8.)  The estimate was $2,780.00 in damage.  (Id.)  Plaintiff then submitted the estimate to his employer for reimbursement, but was told Defendant would not reimburse him.  (Id. at ¶ 9.)

As an account executive, Plaintiff was responsible for identifying prospective customers and directing new business.  (Reif Dep. Vol. 1 at 58:34-59:08.)  In October 2012, Plaintiff received his sales budget for 2013, which provided goals of $119,600 in net sales for November 2012, $103,600 in net sales for December 2012, $113,400 in net sales for January 2013, and $116,000 in net sales for February 2013. (Deposition of Paul Reif, Vol. 2 ("Reif Dep. Vol. 2") at 223:19-224:09.)  In September 2012, Plaintiff was told his "high priority" immediate goal was to open two new accounts per month.  (Reif Dep. Vol. 1 at 76:21-77:03, 77:20-80:23.)

In December 2012, Plaintiff's manager requested he personally deliver dishwasher soap and a cleaning product to a customer.  (Id. at 178:20-181:15, 183:17-184:09, 184:13-24.)  Plaintiff did so.  (Id.)

On December 2012, Plaintiff met with his supervisor to discuss his failure to reach the sales goals and open new accounts.  (Id. at 142:12-143:08, 149:19-25, 147:04-148:11.)  In December 2012, Plaintiff's sales were $26,713 less than his goal, and in January, Plaintiff's sales were $68,870 less than his goal.  (Id. at 129:16-18, 133:29-134:08, Ex. 16; Declaration of Chris Jenkins ("Jenkins Decl.") at ¶¶ 3, 6, and 8.)

On January 7, 2013, Plaintiff requested that his manager not charge a "floating holiday" vacation day on a day where he claims he worked.  (Reif Dep. Vol. 1 at 187:02-188:04; Reif. Dep. Vol. 2 at 265:08-266:08.)

Plaintiff was then placed on a "Performance Improvement Plan" on January 30, 2013.  (Deposition of Chris Jenkins, "Jenkins Dep." 24:23-25:02, 25:16-21, Ex. 45.)[2] Plaintiff was told that his February sales budget was lowered from $116,000 to $65,000, and that he was expected to reach his sales budget and ship goods for three new accounts that month.  (Reif. Dep. Vol. 1, 133:11-134:17, 136:15-23, 138:10-15.) Plaintiff did not meet his reduced sales goals.  (Reif Dep. Vol. 1 at 161:23-163:06.) On February 25, 2013, Defendant decided to terminate Plaintiff's employment; the next day, the paperwork was completed.[3]  (Hergert Decl. ¶ 6, Jenkins Decl. ¶¶ 6, 7.)

On February 26, 2013, Plaintiff called his supervisor, Mr. Jenkins, and informed him that Plaintiff's stepdaughter had multiple sclerosis, and he planned to take the next day, February 27, 2013, off from work.[4]  (Reif Dep. Vol. 1 at 195:23-196:25.) Plaintiff never contacted Shamrock's human resource departments to request a medical leave of absence, nor did he provide a medical certification seeking family

---

[2]  Plaintiff disputes whether he was placed on the Performance Improving Plan because of his sliding sales.  (Statement of Disputed Facts, "SDF," Doc. No. 43-1, at 9.)  Plaintiff contends it was because of the complaints he made, and because he lost two sizeable accounts through no fault of his own.  (Id.)

[3] Plaintiff disputes when his final paycheck was prepared.  (Id. at 11-13.)

[4] Plaintiff disputes that he called his supervisor after the termination decision was made, and instead contends the termination decision was made after his request for FMLA-protected leave.

medical leave, as required under company policy. (Id. at 199:21-200:14, Reif Dep. Vol. 2. 264:11-15.)

On March 1, 2013, Plaintiff was informed of his termination. (Reif Dep. Vol. 2 at 267:25-270:03.) When he received his final paycheck, Plaintiff noted his final paycheck showed he was paid eight hours less than he believed he was entitled to in vacation time. (Reif Decl. at ¶ 12.) Plaintiff contends he was charged eight hours of vacation time for the floating holiday. (Id.)

## B. DISPUTED FACTS

The parties dispute (1) whether Plaintiff's sliding sales were his fault (SDF at 4, 9); (2) when Plaintiff's final check was prepared (SDF 11-13); (3) whether Plaintiff was charged for a floating holiday (SDF at 22); whether Plaintiff's Performance Improvement Plan was to last 30 days (Doc. No. 46, Defendant's Statement of Disputed Facts, at 16); and whether Plaintiff received notice of his rights and responsibilities under the FMLA (Id.).

## V.    DISCUSSION

Defendant argues summary judgment should be granted on Plaintiff's claim: (1) for wrongful termination under the FMLA and CFRA because Plaintiff cannot make out a prima facie case for FMLA interference (Motion at 6-10); (2) for retaliation because Plaintiff did not refuse to engage in any protected activities (Motion at 10-11); (3) for wrongful termination because Plaintiff cannot show any causal relationship between his termination and any alleged complaints he may have made

(Motion at 16-19); (4) for intentional infliction of emotional distress because it is preempted by the California Workers Compensation Act ("WCA") (Motion at 19-22); (5) for failure to indemnify Plaintiff for his car accident because Defendant already provided Plaintiff with compensation to cover expenses associated with using his personal vehicle (Motion at 22-24); and (6) for California Labor Code violations for unauthorized wage deductions, for failure to compensate him for working on January 1, 2013, and for failure to provide accurate wage statements because Plaintiff was paid for his work on January 1, 2013 and his wage statements are accurate (Motion at 24-25).  The Court assesses each argument, in turn, below.

## A.  FMLA and CFRA Claims

Under the FMLA, it is unlawful for an employer to "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions."[5] Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001) (internal citations omitted).  In the Ninth Circuit, when an employee claims he was subjected to "negative consequences simply because he has used FMLA leave, the employer has interfered with the employee's FMLA rights under 29 C.F.R. § 825.220(a)(1)."  Xin Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003) (internal citations omitted).

---

[5] As the FMLA and CFRA statutory schemes "are so similar," "cases addressing FMLA are instructive in interpreting CFRA claims."  Mora v. Chem-Tronics, 16 F.Supp.2d 1192, 1202 (S.D. Cal. 1998).  "Thus, outlining the requirements of the FMLA will suffice for the CFRA claims."  Id. at 1203.  Accordingly, the Court will cite only to FMLA cases with the understanding "that the equivalent provision is found in CFRA, and any legal analysis of the FMLA applies equally to the CFRA claims."  Id.

To make out a prima facie case of FMLA interference, an employee must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014) (citing Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir. 2011)). Defendant does not dispute that (1) Plaintiff was eligible for the FMLA's protections, (2) Defendant is covered by the FMLA, or (3) Plaintiff was entitled to leave under the FMLA. (Motion at 6-8.) Defendant contends Plaintiff never requested leave under the FMLA. Defendant further contends that even if Plaintiff did request leave under the FMLA, it was not a factor in his termination. (Id.)

### 1. Plaintiff Requested Leave under FMLA

Plaintiff properly asserted his right to take leave under the FMLA. When an employee first asserts rights under the FMLA, the employee must explain the reasons for the leave to allow the employer to determine whether the leave qualifies under the FMLA, and the employee must disclose the anticipated duration of the absence. 29 C.F.R. § 825.301(b). Here, Plaintiff informed his supervisor that he intended to take a day off from work to care for his stepdaughter, who was diagnosed with multiple sclerosis. (Reif Dep. Vol. 1 at 195:23-196:25.) Defendant contends Plaintiff's notice was insufficient because Plaintiff did not notify Defendant's Human Resources Department to request a leave of absence and he did not "provide a medical certification seeking family medical leave, as required under company

13

policy." (Motion at 7.) Defendant further alleges Plaintiff was aware of its FMLA/CFRA policy. (Motion at 8.)

In any event, whether or not Plaintiff was aware of Defendant's FMLA/CFRA policy, the FMLA regulations provide that an employee giving notice of the need for protected-FMLA leave need not expressly assert rights under the FMLA, or mention the FMLA to meet the obligation to provide notice. 29 C.F.R. § 825.301(b). Thus, because filling out Defendant's forms cannot be a condition precedent for properly taking leave, Plaintiff properly requested protected-FMLA leave.

### 2. Whether Plaintiff's FMLA Leave Was a Factor in Discharge

Defendant maintains the FMLA-protected leave was not a negative factor in Plaintiff's termination. (Motion at 7-10.) Defendant instead contends that Plaintiff's inability to meet his sales goals was the primary reason for his termination. (Motion at 3-4.) Defendant also alleges that the decision to terminate Plaintiff was made prior to his request to take FMLA-protected leave. (Motion at 8-10.) Plaintiff has not introduced any direct evidence to support the inference that his claim for FMLA-protected leave was a negative factor in Defendant's decision to terminate his employment, and instead relies entirely on circumstantial evidence.

Plaintiff contends that because his final paycheck was made after he requested FMLA-protected leave, and because he was terminated two days after his request to take FMLA-protected leave, there is an "inference" that his termination was "based in part on and caused by him invoking his rights under FMLA/CFRA." (Opposition at 15.)

Although "a close temporal proximity between a claim for FMLA-protected leave and an adverse employment action may support an inference of causation, it should not be considered 'without regard to its factual setting.'" Biba v. Wells Fargo & Co., No. C 09-3249 MEJ, 2010 WL 4942559, at *18 (N.D. Cal. Nov. 10, 2010) (quoting Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003)).

Defendant has produced evidence which shows it prepared the paperwork to discharge Plaintiff before Plaintiff requested to take FMLA-protected leave. (Hergert Decl. ¶ 6, Jenkins Decl. ¶¶ 6, 7.)  Plaintiff failed to introduce evidence showing the decision to terminate him was made later or was caused by his invocation of FMLA-protected leave.  Although Plaintiff was discharged several days after he requested leave and his final paycheck was prepared the day he requested leave, Defendant has demonstrated that no genuine issue of material fact exists as to the causal connection between Plaintiff's claim for FMLA-protected leave and Defendant's decision to terminate his employment.  See Biba, 2010 WL 4942559 at *18 ("Under the circumstances, the fact that her termination occurred within one week of her request for leave is simply insufficient to create a triable issue of fact.").  Defendant established the decision to terminate Plaintiff was made prior to his request for FMLA-protected leave.  Accordingly, the Court grants Summary Judgment as to Plaintiff's FMLA and CFRA claims.

## B.    DEFENDANT DID NOT RETALIATE AGAINST PLAINTIFF

Defendant alleges that Plaintiff cannot prevail under section 1102.5(c) because Plaintiff did not express his refusal to engage in any alleged unlawful activity,

and because the activities Plaintiff complains of are not considered unlawful.  (Motion at 10.)  Plaintiff specifically alleged that the protected activities he engaged in were: (1) delivering dishwasher soap and a cleaning product, and (2) requesting that his manager not charge a personal floating holiday on a holiday when he was working.[6]  (Motion at 10.)

Section 1102.5(c) states that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  Cal. Lab. Code § 1102.5(c).  To establish a prima facie case under section 1102.5(c), a plaintiff must offer proof that: (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse employment action; and (3) that there is a causal link between the two.  Mokler v. County of Orange, 157 Cal. App. 4th 121, 138 (2007).  If Plaintiff establishes a prima facie case, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for the adverse employment action.  Id. at 140.  The burden then shifts back to Plaintiff to prove Defendant's proffered reasons are pretextual.  Id.

Plaintiff contends he engaged in protected activity because he objected to delivering chemical products.  (Opposition at 17.)  Plaintiff has not established, however, that transporting the chemicals was in violation of the law, nor has he identi-

---

[6] Plaintiff also initially stated one of his protected activities was emailing his supervisors about the sale of margarine which contained transfat.  (Motion at 10.)  Plaintiff abandoned this claim, noting that "pursuant to the law cited in the moving papers, this section of the code did not apply to Defendant and therefore his claim on this basis under Labor Code Section 1102.5 cannot succeed."  (Opposition at 16-17.)

fied any specific law that required hazmat certification for the products he trans-
ported. (Motion at 15.)[7]  Hence, Plaintiff has not shown that he engaged in pro-
tected activity.  Even if Plaintiff had established he engaged in protected activity,
Plaintiff has also not offered evidence showing any causal link between such activity
and the adverse employment action.  Accordingly, Plaintiff has not established his
prima facie case under section 1102.5(c) as it relates to transporting the products.

　　　Lastly, Plaintiff alleges he refused to participate in violations of California La-
bor Code Section 224 because he refused to be charged a floating holiday on a day
he worked. (Opposition at 17-18.)  Plaintiff contends that when he was discharged,
his pay was still short one vacation day.  (Id.)  Plaintiff failed to allege with any speci-
ficity, let alone submit evidence supporting such an allegation, that he suffered an
adverse employment action for objecting to being charged the vacation time.  More-
over, as noted above, even assuming that Plaintiff had stated a prima facie case of re-
taliation, the Court finds that Defendant has offered evidence of legitimate, nondis-
criminatory reasons for Plaintiff's discharge and Plaintiff has failed to demonstrate
that those reasons are pretextual. Accordingly, the Court grants Defendant's Mo-
tion for Summary Judgment as to Plaintiff's retaliation claim.

---

[7] Plaintiff argues that, because he failed to conduct any discovery on this issue, the
Court should deny summary judgment. (Opposition at 17.)  Discovery closed in this
matter on January 12, 2016.  (See Doc. No. 32.)  Plaintiff's counsel submitted an
affidavit stating that "this information could be obtained through a request for pro-
duction to Defendant and through an oversite this request was not included in Plain-
tiff's discovery.  At the time discovery was propounded, another attorney at our
firm propounded discovery and I just now found the oversite because of the instant
motion."  (Declaration of Rosemary Amezcua-Moll, Doc. No. 43-3, at ¶ 6.)  No
good cause being shown, the Court declines to extend the discovery period.

### C.  Plaintiff's Claim for Wrongful Termination

Plaintiff contends that he was wrongfully discharged because he: (1) requested to take FMLA-protected leave; (2) inquired into the availability of zero transfat margarine; (3) transported cleaning products; and (4) objected to being charged a floating holiday when he was working.  (Opposition at 18.)  Plaintiff further contends that his complaints "were all made on the basis that he had a reasonable belief that Defendants were in violation of law or that he was seeking to assert his protected rights and therefore he falls within the protected class and his termination on that basis was in violation of public policy."  (Id.)

"The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary to fundamental norms that the termination inflicted an injury sounding in tort." Roby v. McKesson Corp., 47 Cal. 4th 686, 702 (2009).  The Supreme Court of California cautioned that "courts in wrongful discharge actions may not declare public policy without a basis in either constitutional or statutory provisions. . . . [T]he public policy exception presents no impediment to employers that operate within the bounds of law." Gantt v. Sentry Insurance, 1 Cal. 4th 1083, 1094 (1992), overruled on another ground in Green v. Ralee Engineering Co., 19 Cal. 4th 66, 80, fn. 6 (1998).  "To support a wrongful discharge claim, the policy must be (1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial

and fundamental." <u>Phillips v. St. Mary Reg'l Med. Ctr.</u>, 96 Cal. App. 4th 218, 226 (2002).

As Plaintiff's claims under the FMLA and his claims alleging protected activity all fail, so must his claim for wrongful discharge. <u>See</u> <u>Ramirez v. AvalonBay Cmtys., Inc.</u>, No. C 14-04211 WHA, 2015 WL 5675866, at *11 (N.D. Cal. Sept. 26, 2015) ("Where no predicate violation of the law has occurred, a plaintiff cannot state a claim for wrongful termination in violation of the law.")  Plaintiff thus cannot establish a prima facie case for wrongful discharge.  Accordingly, the Court grants summary judgment on Plaintiff's wrongful termination claim.

### D. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Plaintiff's intentional infliction of emotional distress ("IIED") claim also fails. California Labor Code § 3600(a), the California's Workers' Compensation Act ("WCA"), provides that "[l]iability for the compensation provided by [the Act], in lieu of any other liability whatsoever . . . shall   . . . exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . ."

Compensation under California Labor Code is the "sole and exclusive remedy of the employee or his or her dependents against the employer."  Cal. Lab. Code § 3602(a).  In <u>Yau v. Santa Margarita Ford, Inc.</u>, the California Supreme Court held that the WCA was the exclusive remedy for an intentional infliction of emotional distress claim based on emotional injures sustained during the course of

employment.  229 Cal. App. 4th 144, 161 (2014).  Plaintiff's claim for intentional infliction of emotional distress rests on Plaintiff's claim for wrongful discharge.

In <u>Miklosky v. Regents of the Univ. of California</u>, the California Supreme Court held the WCA barred a plaintiff's intentional infliction of emotional distress claim when the plaintiff brought also brought a claim for wrongful termination in violation of public policy and whistle-blowing retaliation, as well as for IIED based upon the same conduct.  44 Cal. 4th 876, 884 (2008).  The Court also distinguished the cases the plaintiff cited, including <u>Shoemaker v. Myers</u>, which Plaintiff here also cites. (Opposition at 20.)

Plaintiff's claims are identical to those in <u>Miklosky</u>, and his IIED claim accordingly is barred by the WCA's exclusivity provisions.  Accordingly, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's IIED claim.

### E.   Whether Defendant failed to indemnify Plaintiff

Plaintiff contends his vehicle was damaged while delivering products as part of his employment.  (Opposition at 21.)  Under California Labor Code § 2802(a), "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ."  Cal. Lab. Code § 2802(a).  Subsection (c) of the same section defines the term "all necessary expenditures or losses" to include "all reasonable costs."  Cal. Lab. Code § 2802(c).

In <u>Gattuso v. Harte-Hanks Shoppers, Inc.</u>, the California Supreme Court held employers must pay their employees separately for vehicle expenses that the employee "actually and necessarily incurred."  42 Cal. 4th 554, 568 (2007).  The Court outlined three different ways employers can satisfy the reimbursement obligation: the "actual expense method," the "mileage reimbursement method," and the "lump-sum method."  <u>Id.</u> at 568-71.  The Court specifically noted the lump-sum payment was the easiest for employers and is suitable as long as there is "some method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement."  <u>Id.</u> at 572-73.

Plaintiff does not dispute that Defendant supplied a $1,250.00 per month stipend in order to compensate employees for the amount they traveled.  (Motion at 23-24; Opposition at 21.)  Plaintiff alleges he incurred damage to his vehicle when he was delivering products, and the monthly stipend did not cover the amount of damage suffered.  (Opposition at 21.)  In <u>Gattuso</u>, the court held that an employee "must be permitted to challenge the resulting reimbursement payment," if the amount paid turns out to be "less than the actual expenses . . . necessarily incurred." 42 Cal. 4th at 568-69.

Plaintiff has not submitted any admissible evidence showing the lump sum was insufficient, and thus, Defendant's Motion for Summary Judgment as to the indemnification claim is GRANTED.

### F. Plaintiff's California Labor Code Violations

Plaintiff asserts claims under §§ 224, 226, and 201 of the California Labor Code. (Motion at 24-26). He contends that his final paycheck was missing one day of vacation time. (Opposition at 22.) Defendant has submitted declarations noting Plaintiff's vacation time was not deducted by a floating holiday, and therefore contend there is no genuine dispute of material fact. (Opposition at 23-25.) Plaintiff, in his declaration, described seeing an eight-hour-deduction in his vacation time. (Reif Decl. at ¶ 12.)

Section 224 of the California Labor Code allow employers to withhold wages when the employer is required to do by state or federal law, or when the deduction is expressly authorized in writing. Cal. Lab. Code § 224. This section of the Labor Code establishes a public policy against any deductions by an employer "from employee wages or earnings, except those deductions specifically authorized by statute." Lindell v. Synthes USA, No. 1:11-CV-02053 LJO BAM, 2016 WL 70305, at *13 (E.D. Cal. Jan. 6, 2016). Plaintiff has not submitted any admissible evidence showing that he was not paid all wages earned. He has thus not created a genuine dispute of material fact as to whether or not he was paid all wages earned. The Court thus GRANTS Summary Judgment as to Plaintiff's seventh claim.

Based on the same facts, Plaintiff contends that Defendant violated § 201 of the California Labor Code. (Complaint at 14-15.) Under § 201, employers are required to pay an employee "the wages earned and unpaid at the time of discharge." Cal. Lab. Code § 201. Thus, as Plaintiff has not established a genuine dispute of material fact as to whether Plaintiff was paid all of the vacation time he was owed, the Court GRANTS Summary Judgment as to Plaintiff's eighth claim for relief.

Under § 226 of the California Labor Code, employers are required to furnish to their employees "accurate" itemized wage statements containing certain information.  Cal. Lab. Code § 226.  Plaintiff contends the wage statements he received were inaccurate because they failed to show all deductions taken. (Complaint at 15.)  Section 226(e) provides a remedy for employees injured by an employer's failure to comply with those requirements.  Cal. Lab. Code § 226(e). "An action pursuant to Section 226(e) requires proof of three elements: (1) violation of Section 226(a); (2) that is 'knowing and intentional'; and (3) a resulting injury." Novoa v. Charter Commcn's, LLC, 100 F. Supp. 3d 1013, 1025-26 (E.D. Cal. 2015).

Even if Plaintiff created a genuine dispute of material fact as to whether he was paid all that he was owed, Plaintiff has not shown evidence that such a violation of § 226(a) was knowing or intentional.  Plaintiff contends that Defendant failed to show all deductions taken from his final paycheck, which constitutes a violation of § 226(a), but has not shown that Defendant's alleged failure to include the eight hours of vacation time was knowing or intentional.  Therefore, the Court GRANTS Summary Judgment as to Plaintiff's ninth claim for relief under Section 226.

## VI.   CONCLUSION

For the reasons stated above, the Court:

1. GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's FMLA and CFRA claims;

2. GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims;

3. GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's wrongful termination claim;

4. GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's intentional infliction of emotional distress claim;

5. GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's indemnification claim; and

6. GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's claims under California Labor Code §§ 224 and 201.

7. GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's claim under California Labor Code §§ 226.

**IT IS SO ORDERED.**

Dated:    3/9/16

_____
Virginia A. Phillips
United States District Judge